# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JEANETTE MARIE HICKMAN,

      Plaintiff,

v.                                                    Case No:   6:22-cv-2267-PGB-LHP

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

Jeanette Marie Hickman ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). Doc. No. 1.   Claimant raises several arguments challenging the Commissioner's final decision, and based on those arguments, requests that the matter be remanded for further administrative proceedings.   Doc. Nos. 20, 22.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence, was decided according to proper legal standards, and should

be affirmed.   Doc. No. 21.   For the reasons discussed herein, it is **RESPECTFULLY**

**RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

## I.   PROCEDURAL HISTORY.

On July 18, 2019, Claimant filed applications for DIB and SSI, alleging a

disability onset date of May 20, 2019.[1]   R. 11, 453, 467.   Her claims were denied

initially and on reconsideration, and Claimant requested a hearing before an ALJ.

R. 284–307, 312–21, 323.   A hearing was held before the ALJ on December 21, 2021,

at which Claimant appeared with an attorney.   R. 172–99.[2]   Claimant and a

vocational expert ("VE") testified at the hearing.   *Id.*

Following the hearing, the ALJ issued an unfavorable decision finding that

Claimant was not disabled.   R. 11–23.   Claimant sought review of the ALJ's

decision by the Appeals Council.   R. 447–49.   On October 13, 2022, the Appeals

Council denied the request for review.   R. 1–6.   Claimant now seeks review of the

final decision of the Commissioner by this Court.   Doc. No. 1.

---

[1]   The "Application Summary for Disability Insurance Benefits" states that Claimant applied for benefits on July 22, 2019, while the "Application Summary for Supplemental Security Income" states that Claimant applied for SSI on October 16, 2019.   R. 453, 467. However, according to the ALJ's decision, Claimant filed both applications on July 18, 2019.   R. 11.   For consistency, and because the application date is not dispositive of this appeal, the undersigned utilizes the application date stated by the ALJ: July 18, 2019.

[2]   While the hearing transcript lists Samantha O'Connor as Claimant's attorney, R. 172, the ALJ's decision lists Ms. O'Connor as a "non-attorney representative of Disability Experts of Florida."   R. 11.   This discrepancy does not appear to be at issue in this appeal.

## II.    THE ALJ'S DECISION.[3]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a), 416.920(a).   R. 11–23.[4]   The ALJ first determined that Claimant meets the insured status requirements of the Social Security Act through December 31, 2024.   R. 14.   The ALJ also found that Claimant had not engaged in substantial gainful activity from the May 20, 2019 alleged disability onset date through the date last insured.   *Id.*[5]   The ALJ concluded that Claimant suffered from the severe impairments of back disorder (lumbago; cervicalgia; thoracic spondylosis), vertigo, and asthma.   *Id.*   However,

---

[3] Upon a review of the record, the undersigned finds that counsel for the parties have adequately stated the pertinent facts of record.   Doc. Nos. 20, 21.   Accordingly, the undersigned adopts those facts by reference and only restates them herein as relevant to considering the issues raised by Claimant.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[5] Although the ALJ noted that Claimant worked after the alleged disability onset date, the ALJ found that the work did not rise to the level of substantial gainful activity. R. 14.

the ALJ found that Claimant's impairments of headaches, unspecified hearing loss, and mental impairments of depression and anxiety disorders were non-severe.   R. 14–15.   The ALJ further concluded Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 15–16.

Upon consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[6] except:

> She can lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently.   She can stand and walk for approximately six (6) hours and can sit for approximately six (6) hours in an 8-hour workday with normal breaks. She could occasionally climb stairs, balance, stoop, kneel, crouch and crawl, but should never climb ladders or scaffolds.   Reaching is limited to frequently.   She must avoid exposure to vibration, unprotected heights and hazardous machinery.   During the eight-hour workday, she must avoid moderate exposure to extreme heat, cold, wetness, humidity, and irritants such as fumes, odors, dust and gases.

---

[6] The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.   If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

R. 16.   Based on this assessment, the ALJ found that Claimant could perform her past relevant work as a credit authorizer.   R. 22.   Accordingly, the ALJ concluded that Claimant had not been under a disability, as defined in the Social Security Act, at any time from the May 20, 2019 alleged disability onset date through February 8, 2022, the date of the ALJ's decision.   R. 22–23.

## III.   STANDARD OF REVIEW.

The Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its

judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

Claimant's brief, while lengthy, is confusingly written, frequently combines issues and legal tenets, and contains numerous perfunctory and underdeveloped arguments.   Doc. No. 20.   The undersigned has done her best to identify all of the issues raised, which, in sum, argue the ALJ "erred by failing to fully account for the 'total limiting effects' of [Claimant's] severe and nonsevere impairments," by failing to properly consider Claimant's impairments of headaches and hearing loss, the medical opinions of record, Claimant's subjective complaints, and the testimony of the VE.   *Id.*[7]   Each issue will be addressed in turn.

### A.   Headaches and Hearing Loss.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.   20 C.F.R. §§ 404.1520(c), 416.920(c). "This step acts as a filter; if no severe impairment is shown the claim is denied, but

---

[7] The Commissioner has also filed a response brief, Doc. No. 21, and Claimant a reply, Doc. No. 22, which have also been considered in issuing this report.

the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). The failure to find additional severe impairments is harmless error if the ALJ considers all the claimant's impairments — severe and non-severe — in combination throughout the rest of the sequential evaluation process. *See, e.g., Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 914–15 (11th Cir. 2014); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951–52 (11th Cir. 2014); *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) ("Indeed, since the ALJ proceeded beyond step two, any error in failing to find that Packer suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").[8]

While ALJs must consider every severe and non-severe impairment in determining a claimant's RFC, "an impairment is not considered severe 'only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 980

---

[8] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

(11th Cir. 2016) *(citing McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "Consequently, in many, if not most cases, there will be no functional limitations from a nonsevere impairment." *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014).

Here, the ALJ concluded Claimant's headaches and hearing loss were non-severe impairments because the medical evidence in the record did not demonstrate Claimant "required aggressive medical treatment, frequent hospital confinement, or surgical intervention for these conditions during the period at issue."   R. 14. Therefore, the medical evidence of record did not "support the conclusion that [Claimant's headaches and hearing loss] have more than a minimal effect on her ability to perform substantial gainful activity on a sustained basis."   R. 14.

Claimant raises two brief objections to this analysis.   First, Claimant argues "the ALJ pointed to no [Social Security Administration ("SSA")] authority or Eleventh Circuit precedent requiring such extreme interventions to justify a finding of severity," rendering the ALJ's determination that Claimant's headaches and hearing loss are non-severe impairments an improper conclusion.   Doc. No. 20, at 19.   Second, Claimant contends the ALJ's RFC determination does not include limitations accounting for her headaches and hearing loss.   *Id*. at 20.   The Commissioner argues the ALJ "reasonably determined that [Claimant's headaches and hearing loss] did not cause work-related limitations."   Doc. No. 21, at 8.

Upon review, the undersigned finds Claimant's first argument unpersuasive, for, as discussed above, at step two of the sequential evaluation process, the ALJ found that Claimant had several severe impairments (back disorder (lumbago; cervicalgia; thoracic spondylosis); vertigo; and asthma), and the ALJ proceeded to step three of the process.  R. 11–23.  Thus, even assuming the ALJ erred in determining that Claimant's headaches and hearing loss are non-severe impairments (which the undersigned does not so find), any error would be harmless because "[t]he finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two . . . ." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011) (citations omitted); *Packer*, 542 F. App'x at 892 ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that Packer suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").

The undersigned finds Claimant's second contention that the ALJ failed to include limitations in the RFC related to her headaches and hearing loss equally unpersuasive.  As an initial matter, the decision reflects that the ALJ considered Claimant's allegations of hearing loss and headaches in formulating Claimant's RFC.  *See* R. 17 (discussing Claimant's testimony about migraines and ibuprofen prescription, as well as Claimant's unremarkable CT scan findings), R. 18

(discussing assessment of unspecified hearing loss).   Notably, based on Claimant's testimony, the ALJ included in the RFC certain environmental restrictions, such as avoiding exposure to irritants such as fumes, odors, dust, and gases.   R. 16.   *See also Boyd v. Saul*, No. 8:20-cv-828-AEP, 2021 WL 3159696, at *6 (M.D. Fla. July 27, 2021) (noting "irritants such as fumes, odors, dust, gases, and poorly ventilated areas" are "potential migraine triggers" (*citing Coheley v. Soc. Sec. Admin.*, 707 F. App'x 656, 659–60 (11th Cir. 2017)).   And while Claimant references numerous medical records that discuss a diagnosis of headaches, Claimant points to no other restrictions in her briefing (nor cites to any medical records) as it relates to functional limitations due to headaches.   Doc. No. 20.   And the record contains conflicting evidence as to whether Claimant suffers from hearing loss.   *See, e.g.*, R. 802, 803 (noting no hearing loss and that Claimant "is able to hear for normal conversation").   In sum, Claimant "has failed to show that [her] hearing loss constituted a severe impairment that affected [her] ability to work," *see McKenzie v. Kijakazi*, No. 1:20-CV-00118-SRW, 2021 WL 4185872, at *7 (M.D. Ala. Sept. 14, 2021), or that her headaches should have resulted in a more restrictive RFC.   *See also McDonnell v. Berryhill*, No. 8:17-cv-3090-T-JRK, 2019 WL 1397930, at *4 (M.D. Fla. Mar. 28, 2019) (no error in addressing the claimant's non-severe impairment of headaches where the record reflected that the ALJ considered records regarding headaches in the RFC assessment).

For these reasons, the undersigned finds Claimant's first assignment of error unpersuasive.

B.   <u>Medical Opinions.</u>

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).   The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis*, 125 F.3d at 1440.   In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the opinions of medical and non-medical sources.   20 C.F.R. §§ 404.1545(a)(3), 416.920(a)(3).

Effective March 27, 2017, the Social Security Administration implemented new regulations related to the evaluation of medical opinions, which provide, in pertinent part, as follows:

> (a) How we consider medical opinions and prior administrative medical findings.   We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.   When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.[9]   The

---

[9] Subparagraph (c) provides that the factors to be considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which includes consideration of the length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; and examining

most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).   We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).   The regulations further state that because supportability and consistency are the most important factors under consideration, the Commissioner "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision."   *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).   "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record."   *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021) (footnote omitted) (citing 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2)).

Pursuant to the new regulations, the Commissioner is not required to articulate how she "considered each medical opinion or prior administrative

---

relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.   20 C.F.R. §§ 404.1520c(c), 416.920c(c).

medical finding from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). "Courts have found that '[o]ther than articulating [her] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [she] considered any other factor in determining persuasiveness.'" *Bell v. Comm'r of Soc. Sec.*, No. 6:20-cv-1923-DCI, 2021 WL 5163222, at *2 (M.D. Fla. Nov. 5, 2021) (*quoting Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)). *See also Delaney v. Comm'r of Soc. Sec.*, No. 6:20-cv-2398-DCI, 2022 WL 61178, at *2 (M.D. Fla. Jan. 6, 2022) (noting that the ALJ may, but is not required to, explain how he or she considered the remaining factors besides supportability and consistency).

"Although the regulations require the ALJ to articulate consideration of the supportability and consistency factors when evaluating a medical opinion from a medical source, they do not require the ALJ to use any specific language to articulate consideration of the factors." *Rico v. Comm'r of Soc. Sec.*, No. 5:22-cv-79-PRL, 2023 WL 2624753, at *4 (M.D. Fla. Mar. 24, 2023) (*citing* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). "As long as the evaluation addresses the substance of the factors, the ALJ meets the articulation requirement." *Id.* (*citing* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). *See also Rivera v. Kijakazi*, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the

evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation." (*citing Cook v. Comm' r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021))); *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." (citations omitted)).

Here, Claimant argues that the ALJ erred in his consideration of the opinions of two consultative examiners, Alex C. Perdomo, M.D. and Junias Desamour, M.D. Doc. No. 20, at 17–19.[10]   In the decision, the ALJ summarized the examination

---

[10] In her brief, Claimant also briefly discusses a medical report by psychological consultative examiner Melisa Flores Ruiz, Psy.D, but other than summarizing the record from Dr. Ruiz, Claimant does not make any argument related to the ALJ's consideration of Dr. Ruiz's opinion.  *See* Doc. No. 20, at 8.   Thus, it is unclear why Claimant references Dr. Ruiz, and to the extent she has attempted to raise an assignment of error with respect to Dr. Ruiz, that argument fails due to its perfunctory nature.  *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in the opening brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority."); *see also McClain of Ga., Inc.*, 138 F.3d at 1422 ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Ross v. Comm'r of Soc. Sec.*, No. 6:15-cv-1764-Orl-DCI, 2017 WL 1180004, at *2 n.2 (M.D. Fla. Mar. 30, 2017) (finding claimant's argument waived given the "perfunctory nature" of the argument (citing *McClain of Ga., Inc.*, 138 F.3d at 1422)).

findings and opinions of these doctors, determining they were unpersuasive, as follows:

> The Office of Disability Determinations referred the claimant to Alex C. Perdomo, M.D. on March 4, 2020 for a consultative evaluation. The claimant complained of chronic back pain with occasional radiation into both lower extremities and associated with numbness and tingling sensation. She claimed being unable to stand or walk for more than 20 to 30 minutes at a time. She also had several year history of chronic asthma. She had several emergency room visits and hospitalizations for asthma exacerbation in the past with most recent one last year. She denied history of respiratory failure. She had been off work since 2019 when she quit her job because of back pain and frequent asthma exacerbations.

> The physical examination showed she was 5 feet 7 inches tall and weighed 123 pounds (BMI 19). Her lungs were clear to auscultation. She had full range of motion of her upper and lower extremities affected at the level of the hips with bilateral hip flexion 75 degrees with pain radiating into the lower back. She was unable to squat due to complaints of lower back pain. She was able to stand on her toes and heels with no major problems. There were no deformities with tenderness over the lumbar spinal process. Her cervical spine was slightly decreased due to both pain and fear of movements triggering vertigo. Her thoracolumbar spine was significantly decreased with forward flexion 45 degrees and lateral flexion and rotation 10 degrees bilaterally. Straight leg raise test was negative. The neurological exam showed normal sensory, motor and deep tendon reflexes. She had normal coordination and station. She had no neurological gait deficits with negative Romberg. She had normal grip strength and fine manipulation. Imaging of the lumbosacral spine showed normal alignment with multilevel discogenic disease and moderate facet joint arthropathy. There was no spondylolisthesis. The pulmonary function test was consistent with moderate obstructive airway disease. The impressions were history of chronic neck pain with mild musculoskeletal function limitation on physical exam; history of chronic lower back pain with severe musculoskeletal function limitation on physical exam and radiographic evidence of moderate

osteoarthritis and degenerative disc disease of the lumbar spine; history of positional vertigo; and moderate persistent asthma.

Dr. Perdomo opined that the claimant could stand and walk for three to four hours in an eight-hour workday.   She could sit for three to four hours a day in an eight-hour workday with normal breaks.   She could occasionally lift and carry, but should limit the weightlifting to no more than 5 to 10 pounds.   She should avoid repetitive bending, stooping or crouching.   There was no assistive device for ambulation or manipulative limitations were seen.   She needed to avoid her known asthma triggers. (Exhibit 8F).

. . . .

The Office of Disability Determinations referred the claimant to Junias Desamour, M.D. on July 1, 2021 for a consultative evaluation.   The claimant was claiming disability due to severe vertigo.   She complained of chronic back pain.   She reported she had been working at Kane's Furniture for a few months but was unable to perform the job.   She was unable to walk and get into the elevator without severe dizziness.   She reported she was unable to perform even some light duty jobs.   She had trouble getting from a parking lot to the store. The claimant lived with her daughter and was able to take care of her personal needs without assistance.   She could cook and wash the dishes.   She could not vacuum, mop or sweep.   She was able to drive a car for short distances to do her own grocery shopping.   She reported she could sit for 30 minutes, stand for 30 minutes and walk for 10 minutes.   She reported she could lift about 10 pounds.

The physical examination showed she was 66 inches tall and weighed 146 pounds (BMI 23.56).   She was well groomed and communicated well.   Her lung fields were clear to percussion and auscultation without wheezing.   She had normal range of motion of the shoulders, elbows and wrists.   Her hand grip was 5/5 bilaterally.   She was able to pick up coins without difficulties.   She had normal range of motion of her finger joints.   There was no crepitus in her knees, ankles and feet with normal range of motion.   Her cervical spine revealed some tenderness over the spinous process.   There was no evidence of paravertebral muscle spasms.   There was some tenderness to percussion of the dorsolumbar spinous processes.   Straight leg raising

was normal.   The neurological exam showed 5/5 muscle strength in the bilateral upper and lower extremities.   Hip strength was 5/5. Sensory was intact.   Reflexes were hypoactive at 1+ on the right and left.   The mental status showed no short term memory deficits.   She was able to recall 3 out of 3 words after 5 minutes.   She had good concentration and followed commands appropriately.   She ambulated with a normal gait and did not require a hand-held assistive device.   She was unable to perform tandem walk or walk on heels or toes because of dizziness.   Her station appeared stable.   The impressions were severe vertigo; chronic back pain; and asthma.

Dr. Desamour opined that the claimant's main physical limitation was a result of severe vertigo.   She was unable to perform some basic activities of daily living or perform part of the examination due to dizziness.   In her condition, Dr. Desamour opined that the claimant was unable to continue work related activities involving prolonged standing, walking, lifting and carrying objects.   She even claimed to have difficulties getting from a parking lot to a store when she had severe vertigo. (Exhibit 16F).

. . . .

State agency medical consultants, Kerri Aaron, M.D. (Exhibits 1A, 2A) and Walter Harris, M.D. (Exhibit 8A) opined that the claimant could perform light exertion with postural and environmental restrictions. By contrast, Dr. Perdomo (Exhibit 9F) and Dr. Desamour (Exhibit 16F) opined that the claimant could not perform even sedentary exertion. I do not find these opinions persuasive based on the overall objective medical evidence and their own examination findings.   Dr. Desamour's opinion is based upon the claimant's complaints of severe vertigo.   CT scans of the head were unremarkable to mild findings. (Exhibit 5F/34; 13F/5).   The claimant continues to drive which does not support her severe vertigo.   MRI findings did show degenerative disc disease of the cervical and lumbar spine (Exhibit 13F, 19F). Pulmonary function tests ranged from mild lung obstruction to moderate airway disease (Exhibit 8F/6; Exhibit 10F/3).   Examination findings including the consultative evaluations show her lungs clear, full range of motion of her back, normal range of motion of her extremities, no neurological deficits, normal motor strength, coordination, station and gait. (Exhibit 5F/30; Exhibit 7F/4; Exhibit

8F/3; and Exhibit 16F/4-5).   I find the state agency opinions persuasive with additional nonexertional limitations based upon her testimony.

R. 18–21.

Claimant argues the ALJ "did not reasonably find [Dr. Perdomo's and Dr. Desamour's] medical opinions unpersuasive."   Doc. No. 20, at 17.   Claimant concedes "her CT scan was unremarkable" but argues brain MRIs "demonstrated chronic microvascular changes in the high right parietal white matter," which is relevant because "MRIs are more effective than CT scans at exposing subtle tissue changes."   *Id.* (*citing* R. 775).   Claimant further concedes she still occasionally drives, but argues she "drives infrequently because she is uncomfortable behind the wheel, only occasionally driving to the pharmacy since it is very close to her home." *Id.* (*citing* R. 179–80).   Claimant also argues that Drs. Perdomo and Desamour's examination findings actually support their opinions, contrary to the ALJ's findings.   *Id.* at 17–18 (*citing* R. 713–15, 798–99, 804).   Finally, Claimant contests the ALJ's conclusion that Dr. Perdomo's and Dr. Desamour's reports "demonstrated findings consistent with normal range of motion, no neurological deficits, and normal coordination and gait," in essence, arguing that the ALJ cherry-picked findings from their reports.   *Id.* at 17–20.   The Commissioner responds that the ALJ "provided an explanation supporting his findings, and substantial evidence supports it."   Doc. No. 21, at 8.

The undersigned agrees with the Commissioner and finds that the ALJ's decision is supported by substantial evidence and complies with the applicable regulations.   Indeed, the ALJ evaluated both the supportability and consistency of Dr. Perdomo's and Dr. Desamour's medical opinions and found them unpersuasive when considered in light of the available medical evidence in the record.   *See* 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).   Specifically, as detailed above, the ALJ cited to the medical reports showing Claimant retained full range of motion in her back and extremities even despite her impairments, including the records from Dr. Perdomo and Dr. Desamour, as well as CT scans and pulmonary examinations showing mild findings.   R. 21 (*citing* R. 672, 676, 706, 714, 717, 726, 775, 803–04). This evidence, both from Drs. Perdomo and Desamour (supportability) and other records (consistency) could reasonably support the ALJ's conclusion that Claimant retained a residual capacity to perform more work than Dr. Perdomo and Dr. Desamour suggested.[11]   *See id.* (*citing* R. 714, 717, 803–04).   Thus, the undersigned finds the ALJ's decision supported by substantial evidence in this regard.   *See*

---

[11] To the extent that Claimant argues "the ALJ's conclusion that the consultative evaluations demonstrated findings consistent with normal range of motion, no neurological deficits, and normal coordination and gait is patently unsupported in the record," the undersigned finds this argument unavailing.   *See* Doc. No. 20, at 18–19 (emphasis omitted).   As the ALJ noted in the decision, Dr. Desamour's examination notes state that Claimant had normal range of motion in her upper and lower extremities, normal neurological findings, no apparent mental deficits, and that Claimant ambulates with a normal gait.   *See* R. 803–04.

*generally Irwin v. Comm'r of Soc. Sec.*, No. 2:20-cv-230-MRM, 2021 WL 4077586, at *7 (M.D. Fla. Sept. 8, 2021) (citations omitted) ("[N]othing in the relevant regulations requires ALJs to apply an all-or-nothing approach when assessing a medical source's opinions.   Instead, the ALJ's RFC determination must merely be supported by substantial evidence."); *see also Gibbs v. Comm'r of Soc. Sec.*, No. 6:22-cv-719-MAP, 2023 WL 4117996, at *5 (M.D. Fla. June 22, 2023) (concluding an ALJ's "brief" discussion of a doctor's medical opinions was supported by substantial evidence because the ALJ's "earlier discussion of the medical evidence provides additional support.").

Despite Claimant's assertion that the ALJ's "explanations are not accurate or logical," what Claimant really asks is for the Court to reweigh the evidence, which is not within the province of this Court.   *See* Doc. No. 22, at 1; Doc. No. 20, at 13–17 (Claimant citing other medical records to buttress her argument that Dr. Perdomo's and Dr. Desamour's suggestions of more restrictive occupational limitations "are supported by and consistent with the medical record").   *See also Bloodsworth*, 703 F.2d at 1239; *Hall v. Comm'r of Soc. Sec.*, No. 6:09-cv-908-Orl-GJK, 2010 WL 1252180, at *8 (M.D. Fla. Mar. 26, 2010) ("[A] reviewing court may not reweigh the evidence or make additional findings not previously addressed by the ALJ.").

Accordingly, the undersigned will respectfully recommend that the Court reject Claimant's arguments regarding the ALJ's consideration of the opinions of Drs. Perdomo and Desamour.

C.   <u>Subjective Complaints.</u>

A claimant may establish disability through his or her own testimony of pain or other subjective symptoms.   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).   A claimant seeking to establish disability through his or her own testimony must show the following:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).   "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."   *Foote*, 67 F.3d at 1561–62.   The Court will not disturb a clearly articulated finding that is supported by substantial evidence.   *Id.* at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   In doing so, the ALJ considers a variety of

evidence, including, but not limited to, the claimant's history, the medical signs, and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* §§ 404.1529(c)(1)–(3), 416.929(c)(1)–(3). Factors relevant to the ALJ's consideration regarding a claimant's allegations of pain include (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant receives for pain; (6) measures used for pain relief; and (7) other factors pertaining to functional limitations and restrictions to pain. *Id.* §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii).

Here, in the decision, the ALJ cited the relevant pain standard, summarized Claimant's testimony and subjective complaints, and considered the medical and opinion evidence of record, thereafter finding that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 16–21. In doing so, the ALJ specifically mentioned a third-party function report from Claimant's daughter; the fact that Claimant received unemployment benefits in 2020; and found

unpersuasive medical opinions because Claimant did not require hospitalization nor take medications for her mental health impairments, Claimant had a wide range of daily activities, and Claimant was able to work after her alleged disability onset date.   R. 21–22.   Overall, the ALJ concluded that Claimant's subjective complaints were not "substantially supported by the evidence to the extent that she would be precluded from all work activity" and the RFC limitations provided would reasonably accommodate Claimant's symptoms.   R. 22.   The ALJ also noted that he included non-exertional limitations in the RFC based on Claimant's testimony. R. 21.

Claimant argues the ALJ "did not explain how or why" he found Claimant's testimony only partially credible and instead "simply concluded that the RFC was supported by the evidence without explaining how her testimony aligned with that evidence."   Doc. No. 20, at 20–21.   The Commissioner disagrees.   Doc. No. 21, at 7.

The undersigned finds Claimant's contention unpersuasive.   As discussed above, the ALJ provided several reasons for finding Claimant's subjective complaints less than fully persuasive, including the medical evidence of record, her ability to work after the onset date, her receipt of unemployment benefits, and her activities of daily living.   R. 21–22.   These are valid bases for the ALJ's consideration.   *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Markuske v. Comm'r of Soc.*

*Sec.*, 572 F. App'x 762, 766–67 (11th Cir. 2014) (finding ALJ's discussion of objective medical evidence of record provided "adequate reasons" for ALJ's decision to partially discredit the claimant's subjective complaints of pain); *Bliven v. Comm'r of Soc. Sec.*, No. 6:13-cv-1150-Orl-18TBS, 2014 WL 4674201, at *9 (M.D. Fla. Sept. 18, 2014) ("The ALJ is meant to consider a claimant's daily activities in combination with other factors, as stated in 20 CFR § 404.1529(c)."); *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 F. App'x 944, 948 (11th Cir. 2010) (finding the ALJ provided explicit reasons supported by substantial evidence—to include activities of daily living, medical evidence of record, and ability to perform part time work—to discount the claimant's subjective testimony).

The only basis on which the ALJ relied that Claimant explicitly addresses in her briefing is the ALJ's reliance on Claimant's receipt of unemployment benefits. Doc. No. 20, at 21.   According to Claimant, "SSA policy prohibits reliance upon receipt of unemployment compensation benefits as a negative credibility factor." *Id.*   This is simply inaccurate, as the agency policies that Claimant quotes state that an "application for unemployment benefits is evidence that the ALJ must consider together with all the medical and other evidence."   *See id.* (*citing* Memorandum from the Social Security Forum 07-11, Vol. 29 No. 11 (Nov. 15, 2006)).   And here, the receipt of unemployment benefits was not the only basis for the ALJ's decision. *See* R. 21–22.   Instead, the ALJ merely "point[ed] out the inconsistency between

collecting unemployment benefits while claiming to be as limited as [Claimant] alleges." *Willimon v. Astrue*, No. 3:08-cv-1235-J-JRK, 2010 WL 1252152, at *4 (M.D. Fla. Mar. 26, 2010); R. 21.   *See also Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding the ALJ's reliance on the claimant's receipt of unemployment benefits, among other reasons, supported the ALJ's credibility determination); *Strother v. Comm'r of Soc. Sec.*, No. 8:16-cv-486-T-DNF, 2017 WL 2791509, at *3 (M.D. Fla. June 28, 2017) ("While the receipt of unemployment benefits, standing alone, does not automatically disqualify a claimant from consideration of Social Security benefits, an ALJ may consider a claimant's receipt of unemployment benefits in making a credibility determination." (*citing Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at *6 (M.D. Fla. Mar. 31, 2011))).

Notably, this is not a case where the ALJ wholesale rejected Claimant's subjective complaints of pain; to the contrary, the ALJ explicitly accounted for Claimant's subjective complaints in fashioning the RFC.   R. 16, 21.   The relevant inquiry "is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."   *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).   *See also Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) ("It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." (alteration in original) (*quoting Grant v. Richardson*, 445 F.2d 656, 656 (5th

Cir. 1971))).

Because the ALJ provided adequate reasons for discounting Claimant's subjective complaints, the undersigned respectfully recommends that the Court reject Claimant's argument to the contrary.

> D.   VE Testimony.

An ALJ may consider the testimony of a VE at step five of the sequential evaluation process when determining whether the claimant can perform other jobs in the national economy.   *Phillips*, 357 F.3d at 1240.   The ALJ must pose hypothetical questions that are accurate and that include all of the claimant's functional limitations.   *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include in the hypothetical question "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported," *Crawford*, 363 F.3d at 1161.

Claimant appears to argue the ALJ failed to include in Claimant's RFC specific limitations stated in a hypothetical to the VE, including that Claimant be afforded four, ten-minute breaks in an eight-hour day; that Claimant's fatigue "occasionally interferes with concentration and pace and perhaps persistence"; and the need to lie down more than ten percent of the workday and/or be absent from work more than two days per month.   Doc. No. 20, at 11–12.   According to

Claimant, these restrictions are supported by the opinions of Dr. Desamour that she could only sit for thirty minutes and stand/walk for ten minutes. *Id.* at 12. So, Claimant argues, substantial evidence does not support the ALJ's decision. *Id.*[12]

Outside of the opinion of Dr. Desamour and her testimony, Claimant points to nothing in her briefing supporting the limitations that she alleges the ALJ should have included in the RFC. *See id.* And to the extent that Claimant relies on the opinions of Dr. Desamour, these opinions do not speak to the specific restrictions cited by Claimant, and as discussed above, the ALJ's decision to find Dr. Desamour's opinions unpersuasive is supported by substantial evidence, as is the ALJ's decision with regard to Claimant's subjective complaints. Consequently,

---

[12] In this portion of her brief, Claimant also points to hearing testimony that she "is unable to reach overhead without using a grabber," and that she experiences noise sensitivity, visual disturbances, and photosensitivity, and appears to argue that the ALJ should have included these limitations in hypotheticals to the VE. *Id.* Claimant does not expand on this argument, nor cite any legal authority demonstrating these limitations would preclude return to prior work as a credit authorizer, besides noting that her prior work requires frequent reaching, hearing, and near acuity. *Id.* The undersigned therefore finds the argument perfunctory and thus waived. *See Whitten*, 778 F. App'x at 793. Notably, at the hearing, Claimant testified in response to a question about difficulties in overhead reaching: "I use - - we have a grabber. . . . But I really don't have no - - I don't normally reach over my head." R. 186. There was no explicit testimony, as suggested by Claimant in her briefing, that she *cannot* reach overhead without the use of a grabber. *Id.* *See also* Doc. No. 20, at 12. And insofar as Claimant argues that "she experiences noise sensitivity, visual disturbances, and photosensitivity," this statement is likewise made in a perfunctory manner, and Claimant makes no attempt to explain how these symptoms conflict with the RFC assessed by the ALJ. Doc. No. 20, at 12. It appears, instead, that Claimant is asking the Court to reweigh the evidence in this case, which the Court may not do. *See Bloodsworth*, 703 F.2d at 1239.

because Claimant has not established error in the RFC determination, she has not established error in the ALJ's reliance on the testimony of the VE.   *See Straka-Acton v. Comm'r of Soc. Sec.*, No. 6:14-cv-630-Orl-GJK, 2015 WL 5734936, at *4 (M.D. Fla. Sept. 29, 2015) ("[T]he ALJ's hypothetical question to the VE, which is consistent with the ALJ's RFC determination, properly accounted for Claimant's functional limitations."); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542–43 (11th Cir. 2016) (rejecting argument that the ALJ's hypothetical to the VE was defective "because the criticisms that [the claimant] aims at the hypothetical question are identical to those leveled at the ALJ's RFC, and, as discussed above, the RFC is supported by substantial evidence"); *Grasman v. Astrue*, No. 3:07–CV–142 2009 WL 481476, at *5 (M.D. Ga. Feb. 23, 2009) ("The ALJ properly relied on the VE's testimony, as the hypothetical posed included all of the plaintiff's reasonable limitations. [Claimant] failed to show how her hearing impairment prevented her from performing her past work as an assembler, and the additional limitations she puts forth regarding her hearing impairment were not found to be credible by the ALJ."). Nor was the ALJ "required to adopt the VE's testimony in response to [certain] hypotheticals since these additional assumed limitations were not included in the ALJ's assessment of [Claimant's] RFC." *Everett v. Comm'r of Soc. Sec.*, No. 8:20-cv-1242-JSS, 2022 WL 10622365, at *3 (M.D. Fla. Jan. 20, 2022).

Accordingly, the undersigned also finds Claimant's final assignment of error

unpersuasive.

## V.    RECOMMENDATION.

For the reasons discussed herein, it is **RESPECTFULLY RECOMMENDED** that the Court **AFFIRM** the final decision of the Commissioner.  It is further **RECOMMENDED** that the Court direct the Clerk of Court to issue a judgment consistent with its Order on this Report and Recommendation and, thereafter, to close the file.

### NOTICE TO PARTIES

A party has fourteen days from the date the Report and Recommendation is served to serve and file written objections to the Report and Recommendation's factual findings and legal conclusions.  Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 18, 2023.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy